NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NICOLE LAVECCHIA, | : | |
| | : | |
| Plaintiff, | : | **Civil Action No. 20-9035 (SRC)** |
| | : | |
| v. | : | |
| | : | **OPINION** |
| | : | |
| WALMART INC., | : | |
| Defendant. | : | |

**CHESLER**, District Judge

      This matter comes before the Court on a motion for summary judgment filed by Defendant Walmart, Inc. ("Walmart").  Plaintiff Nicole Lavecchia ("Lavecchia") opposes the motion.  The Court, having considered the papers filed by the parties, proceeds to rule on the motions without oral argument pursuant to Federal Rule of Civil Procedure 78.   For the reasons that follow, the Court will reserve judgment on the motion and direct the parties to engage in limited discovery.

### I.       Background

      This action concerns an alleged slip in the Secaucus, New Jersey Walmart location. Lavecchia alleges, on May 20, 2018, she was shopping at the Secaucus Walmart and slipped on a "substance" on the floor of the produce department.  (Compl. ¶ 3).  The parties dispute the existence and the nature of this alleged substance.  (Def. Br. 2-3; Pl. Br. § I).  Lavecchia testifies she slipped on a crushed grape, which she described as "green and mushy."  (Lavecchia Depo. 181:1-7, 182:14-18).  Walmart casts doubt on the credibility of Lavecchia's testimony, noting inconsistencies in the description of the alleged substance over the course of the litigation, specifically that she first used the "green and mushy" description in her deposition.  (Def. Br. at

8-9).  Walmart instead relies on the testimony of its associate Jonathan Reyes, who testified he directed another associate to wipe the area of the floor where Lavecchia slipped with a paper towel. Reyes testified the associate then showed him the paper towel after wiping the floor and it was "completely dry."  (Def. Br. at 8 n.1; Reyes Depo. 47:3-4).  Walmart has also submitted surveillance footage of the slip.  The floor is not visible in this footage.  (Def. Exh. C).

On April 14, 2023, Walmart moved for summary judgment arguing Lavecchia failed to produce evidence that it had actual or constructive notice of a dangerous condition that caused her to slip.  First, it asserts Lavecchia cannot establish a dangerous condition existed before she slipped, based on its framing of the evidence described above.  Second, it asserts Lavecchia cannot establish actual notice, because there is no evidence Walmart employees were aware of a dangerous condition, nor constructive notice, because there is no evidence of how long a dangerous condition existed.  Furthermore, Walmart asserts Lavecchia cannot recover under the Mode of Operation Doctrine, an alternative theory to notice, because she cannot identify the source of the alleged substance.

Lavecchia asserts she can establish actual knowledge because of the number of Walmart employees in the area at the time of the slip.  In the alternative, she asserts she can recover under the Mode of Operation Doctrine based on her testimony that she slipped on a "green and mushy" substance which she asserts was a crushed grape.  (Lavecchia Depo. 181:1-7, 182:14-18).

## II.    Discussion

### A.   Summary Judgment Standard

The Court evaluates Walmart's motion for summary judgment under Federal Rule of Civil Procedure 56(a).  Rule 56(a) provides that a "court shall grant summary judgment if the movant

shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine if a reasonable jury could return a verdict for the nonmoving party and material if, under the substantive law, the dispute would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Although the burden of proof rests initially with the party moving for summary judgment, when a motion is made and supported," the nonmoving party must establish the existence of a genuine issue as to a material fact in order to defeat the motion.  Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).

To create a genuine issue of material fact, the nonmoving party must come forward with sufficient evidence to allow a jury to find in its favor at trial.  Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001), overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs, 571 U.S. 177 (2014).  The nonmoving party cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248.  "In attempting to defeat summary judgment, '[s]peculation and conclusory allegations do not satisfy [the nonmoving party's] duty.'"  Razak v. Uber Techs., Inc., 951 F.3d 137, 144 (3d Cir. 2020) (alterations in original) (quoting Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999)).  When considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'"  Tolan v. Cotton, 572 U.S. 650, 657 (2014) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)).  It may not make credibility determinations or otherwise weigh the evidence.  Anderson, 477 U.S. at 255; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004).

B.  <u>Negligence & Premises Liability</u>

This action is based in diversity, so the Court will apply the substantive tort law of the State of New Jersey.  <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938).  In New Jersey, negligence requires showing "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages."  <u>Brunson v. Affinity Fed. Credit Union</u>, 199 N.J. 381, 400 (2009).  A plaintiff bears the burden of proving each of these elements.

"Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation."  <u>Nisivoccia v. Glass Gardens, Inc.</u>, 175 N.J. 559, 563 (2003).  Reasonable care requires business owners to "discover and eliminate dangerous conditions," "maintain the premises in safe condition," and "avoid creating conditions that would render the premises unsafe."  <u>Id.</u>  The duty of care does not require a business owner to eliminate every conceivable danger.  Rather, liability depends on whether the business owner had actual or constructive knowledge of the dangerous condition.  <u>Prioleau v. Ky. Fried Chicken, Inc.</u>, 434 N.J. Super. 558, 570 (App. Div. 2014).  A business owner has actual notice of a dangerous condition when it or its employees actually become aware of the condition.  <u>Id.</u> at 571.  Constructive notice is imputed to a business owner if a dangerous condition exists for a long enough period such that it would be discovered and corrected by a reasonably diligent business owner.  <u>Parmenter v. Jarvis Drug Store, Inc.</u>, 48 N.J. Super. 507, 510 (App. Div. 1957).

However, a plaintiff may be relieved of the notice requirement under the Mode of Operation Doctrine.  Under this Doctrine, a plaintiff "is entitled to an inference of negligence and is relieved of the obligation to prove" notice when, because of "self-service or a similar component of the defendant's business, . . . it is reasonably foreseeable that customers will interact directly

4

with products or services, unassisted by the defendant or its employees." Prioleau v. Ky. Fried Chicken, Inc., 223 N.J. 245, 248 (2015). The Doctrine requires "a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred" id. at 262, taking into account whether those self-service components made the emergence of a dangerous condition "reasonably foreseeable," Jeter v. Sam's Club, 250 N.J. 240, 256 (2022).

C. Actual Notice

Walmart asserts Lavecchia failed to establish it had actual or constructive notice of a dangerous condition where she slipped on the floor. In her opposition brief, Lavecchia only asserts a theory of actual notice.[1] Lavecchia's actual notice theory relies on her assertion that there were six or seven Walmart employees in the produce area when she slipped. With several employees in the area, she reasons that it is likely one of them saw the alleged substance on the floor, therefore putting Walmart on notice. And because there is a reasonable probability that Walmart was on actual notice of the condition, she asserts actual notice is a disputed fact question which must be decided by a jury.

However, Lavecchia's assertion is merely speculation. To defeat summary judgment Lavecchia must come forward with actual evidence capable of establishing a fact at trial. Gleason, 243 F.3d at 138. Speculative assertions do not satisfy her burden. Razak, 951 F.3d at 144. Lavecchia presents no evidence suggesting any individual Walmart employee was aware of a dangerous condition before the slip. She instead wants to ask a jury to conclude, from the presence

---

[1] At various points in her brief, Lavecchia makes the conclusory assertion that Walmart had constructive notice, without providing any legal argument to support that assertion. However, conclusory statements are insufficient to defeat summary judgment. Razak, 951 F.3d at 144.

of six or seven employees in the produce area, that it was more likely than not that someone saw the alleged substance.  Adding to the speculative nature of the theory, Lavecchia has no evidence of how long the alleged substance was on the floor.  Even if a jury were permitted to speculate whether it was likely a Walmart associate saw the alleged substance, such an inquiry would be directionless without knowing whether it was on the floor for, say, 30 seconds or 30 minutes.[2]  Lavecchia may rely on inferences to establish certain facts, and the Court is obligated to view those inferences in the light most favorable to her.  But the logical bridge from "there were several employees in the area" to actual notice is too great a span to cross with mere inferences, even with the favorable summary judgment standard.

      D.  <u>Mode of Operation Doctrine</u>

      Lavecchia invokes the Mode of Operation Doctrine to relieve herself of the requirement to show Walmart was on notice of the dangerous condition.  She asserts Walmart's produce department used a self-service business model, drawing on New Jersey case law where grocery stores are held to be self-service businesses.  <u>See, e.g.</u>, <u>Nisivoccia</u>, 175 N.J. at 565.  Walmart argues Lavecchia cannot invoke the Mode of Operation Doctrine without identifying the substance allegedly causing her to slip.  It argues Lavecchia has not put forward sufficient evidence to establish that she slipped on a grape, or some other product from the produce department.

---

[2] The length of time a dangerous condition exists is more associated with constructive notice rather than actual notice.  Lavecchia's theory could be characterized as a constructive notice theory—with so many associates in the area, someone should have noticed the alleged substance.  But because Lavecchia cannot establish how long the alleged substance was on the floor, she frames her theory into a probabilistic theory of actual notice—not merely that someone should have discovered the condition, but under the circumstances, surely someone must have discovered it.

To invoke the Mode of Operation Doctrine, a plaintiff must establish "a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred" based on whether those self-service components made the emergence of a dangerous condition reasonably foreseeable.  Id. at 262.  While the Doctrine does not formally require a plaintiff to identify the source of a dangerous condition, it would be difficult to establish such a nexus without identifying a hazard as originating from some product or equipment in a self-service area.[3]

However, Lavecchia's testimony is sufficient to establish she slipped on a grape.  In her deposition, she clearly testified that she slipped on a grape.  (Lavecchia Depo. 182:14-18).  Contrary to Walmart's assertion, she is not required to corroborate her testimony to defeat summary judgment.  See Anderson, 477 U.S. at 248.  Her testimony alone is enough to allow a reasonable jury to conclude she slipped on a grape.

Walmart asserts Lavecchia's testimony is insufficient to defeat summary judgment.  It notes that its associate Jonathan Reyes testified that when another employee wiped the area of the floor where Lavecchia slipped with a paper towel, that paper towel was "completely dry."  (Def. Br. at 8 n.1; Reyes Depo. 47:3-4).  This testimony creates a factual dispute, one which is appropriate for a jury to decide.  Anderson, 477 U.S. at 255.  Additionally, Walmart asserts

---

[3] The Mode of Operation Doctrine can apply to dangerous conditions outside of a self-service area if a plaintiff can establish a nexus between the condition and the self-service business model.  See Prioleau, 223 N.J. at 245 ("[T]he rule applies only to accidents occurring in areas affected by the business's self-service operations, which may extend beyond the produce aisle of supermarkets and other facilities traditionally associated with self-service activities.  The dispositive factor is not the label given to a particular location, but whether there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." (citations omitted)).

Lavecchia's testimony is not credible because she did not consistently describe the substance as "green and mushy" throughout the course of the litigation.  (Def. Br. at 8).  This, however, is a question of credibility, which is an issue for a jury to evaluate.[4]  <u>Anderson</u>, 477 U.S. at 255.

Lavecchia therefore has sufficient evidence to establish she stepped on a grape.  That is sufficient to establish a nexus for Mode of Operation Doctrine purposes, assuming Lavecchia can show such a hazard was reasonably foreseeable from Walmart's self-service operations.  Therein lies the rub.  Last year, the Supreme Court of New Jersey decided <u>Jeter v. Sam's Club</u>, 250 N.J. 240 (2022), a factually similar case in which a plaintiff slipped on a grape in a grocery store.  It held that plaintiff could not establish a nexus between the grape on the floor and the defendant's self-service operations because the defendant used safe packaging—plastic clamshell containers— which made the risk of loose grapes not reasonably foreseeable.  Therefore, that plaintiff was not excused from establishing actual or constructive notice.  The Supreme Court explicitly held "the mode of operation rule does not apply to the sale of grapes in closed clamshell containers."  <u>Id.</u> at 256.

Neither party cited this case.  Nor did the Court find information in the record concerning how Walmart packaged its grapes at the time of the incident.  This Court has an obligation to faithfully follow state law when exercising diversity jurisdiction.  The Court also recognizes this may be a case dispositive issue:  Lavecchia's case may succeed or fail depending on how Walmart packaged its grapes.  Rule 56(f) allows the Court to grant summary judgment on grounds not raised by the parties after giving notice and a reasonable time for the parties to respond.  Fed. R. Civ. P.

---

[4] The Court makes no comment at this time on the admissibility of any impeachment evidence against Lavecchia.

56(f)(2).  Accordingly, the Court directs the parties to engage in limited discovery to determine how the Secaucus Walmart packaged its grapes around the time of May 20, 2018.  The parties shall make evidentiary submissions concerning the packaging of the grapes thirty days from the entry of this opinion's accompanying order.  The parties may also submit a supplemental brief, no longer than four pages, arguing whether summary judgment is appropriate in light of <u>Jeter</u>. Because the parties have not yet briefed this case, they should feel free to present legal arguments concerning how the Court should read <u>Jeter</u>.  The parties should not take any statement in this opinion concerning <u>Jeter</u> as a definitive legal conclusion, and they may challenge whether <u>Jeter</u> applies to this case at all.

### III.    Conclusion

For the foregoing reasons, the Court will reserve its decision on Walmart's summary judgment motion.  The parties are directed to engaged in limited discovery concerning how the Secaucus Walmart packaged its grapes around the time of May 20, 2018.  The parties are to make evidentiary submissions no later than July 20, 2023.  The parties may supplement their submissions with a brief, no longer than four pages, making factual and legal arguments addressing whether summary judgment is appropriate in light of <u>Jeter v. Sam's Club</u>, 250 N.J. 240 (2022).   An appropriate order will be filed.


    s/ Stanley R. Chesler
    STANLEY R. CHESLER
    United States District Judge

Dated:  June 20, 2023